DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Dana B. ("Father"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Father is the natural father of A.B., born August 29, 2005. A.B. was a premature baby, born at 26 weeks gestation, and suffered many health problems and developmental delays as a result. A.B. was later diagnosed with cerebral palsy.
 {¶ 3} On January 15, 2006, A.B. was removed from the home pursuant to Juv. R. 6 following an incident of domestic violence during which A.B. was dropped. A.B.'s mother indicated that she was overwhelmed and could not care for the child. A.B.'s mother later voluntarily relinquished her parental rights and is not a party to this appeal. *Page 2 
 {¶ 4} On December 17, 2007, CSB moved for permanent custody of A.B. Following a hearing on the motion, the trial court terminated Father's parental rights and placed A.B. in the permanent custody of CSB. Father appeals and raises one assignment of error.
 II. ASSIGNMENT OF ERROR "THE JUVENILE COURT'S DECISION TO AWARD PERMANENT CUSTODY TO [CSB] WAS AGAINST THE MANIFEST [WEIGHT] OF THE EVIDENCE."
 {¶ 5} Father contends that the trial court's decision to terminate his parental rights and place A.B. in the permanent custody of CSB was not supported by the evidence. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 6} The trial court found that the first prong of the permanent custody test was satisfied for several reasons, including that A.B. had been in the temporary custody of CSB for more than 12 of the prior 22 months. Although Father challenges some of the trial court's alternate findings on the first prong of the permanent custody test, he does not challenge the trial court's "12 of 22" finding, which is supported by the record. The record demonstrates that A.B. *Page 3 
had been in the temporary custody of CSB for nearly 22 months at the time the motion for permanent custody was filed.
 {¶ 7} Next, Father challenges the trial court's finding that permanent custody was in the best interest of A.B. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider "all relevant factors, including, but not limited to," the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 8} This Court often does not quote the final best interest factor, but instead states in a footnote that "[t]he factor set forth in R.C. 2151.414(D)(5) is not relevant in this case[,]" because it is unnecessary to review that factor when it is inapplicable to the facts of the case. See, e.g., In re K.W., 9th Dist. No. 23613, 2007-Ohio-3626, at fn. 2. The parties here do not dispute that none of the factors set forth R.C. 2151.414(E)(7) through (11) apply to the facts of this case. Nevertheless, Father maintains that the trial court was required to make explicit findings on this factor and that its failure to do so was reversible error. R.C. 2151.414(D) requires the court to *Page 4 
consider "all relevant" factors that are enumerated, not factors that are unrelated to the facts of this case. The trial court did not err by failing to discuss an irrelevant best interest factor.
 {¶ 9} The trial court properly applied the relevant best interest factors, beginning with the interaction and interrelationship of the child with Father and the foster care providers. Father's interaction with A.B. during the two years prior to the permanent custody hearing had been limited to supervised visitation. As A.B. had been removed from the home as a young infant, this two-year period represented well over half of her lifetime, during which she went through significant developmental changes. During this substantial portion of A.B.'s life, however, Father attended approximately half of the scheduled visits with his child. Moreover, when he did visit with A.B., Father tended to sit and observe and did not interact much with the child. In fact, the caseworker testified that Father fell asleep during approximately 25 percent of the visits that he attended. Although Father's attendance and participation had improved during recent months, the improvement was not seen until after CSB filed the motion for permanent custody, nearly two years after A.B. was removed from the home.
 {¶ 10} A.B. has significant developmental delays due to her premature birth and she has also been diagnosed with cerebral palsy. A.B. requires regular speech, occupational, and physical therapy; she must eat a special diet and has difficulty swallowing; and she must attend frequent medical appointments. Father testified that he would learn how to care for A.B. but, at the time of the hearing, he had done nothing to acquire any insight into his child's special needs. Father had not attended any of A.B.'s many medical appointments and he seemed to have no understanding about his daughter's special needs. During one visit when A.B. began choking on food, a CSB employee had to assist the child because Father was unable to do so. *Page 5 
 {¶ 11} The caseworker testified that, although there appears to be a slight bond between A.B. and Father, the agency was concerned about the limited contact that had taken place between parent and child. CSB had requested that Father have a bonding assessment so that a professional could gauge the degree of bonding between parent and child. A psychologist sent a letter to Father more than one month prior to the permanent custody hearing but Father failed to schedule an appointment for a bonding assessment.
 {¶ 12} A.B. had been living in the same foster home for approximately two years, and was doing well there. She had spent most of her young life there, was assimilated into the family, and the foster parents had expressed a desire to adopt her.
 {¶ 13} Because A.B. was only two years old at the time of the permanent custody hearing, the guardian ad litem spoke on her behalf. The guardian recommended permanent custody, emphasizing that A.B. is an "at risk" child, with many special needs, who needs a consistent caregiver who can ensure that she continues to participate in regular physical, speech, and occupational therapy and that she continues to attend frequent medical appointments. The guardian stressed that Father had not attended any of A.B.'s medical appointments, had not regularly attended visitation with the child, and had little understanding of her special needs or how to care for her.
 {¶ 14} A.B. had been in the temporary custody of CSB for more than two years by the time of the permanent custody hearing. As she was a young infant at the time she was removed from the home, A.B. had spent most of her life living away from her parents and had become assimilated in her foster home.
 {¶ 15} A.B. was in need of a legally secure permanent placement and there were no suitable relatives available to take long-term custody of her. The trial court reasonably *Page 6 
concluded that a legally secure permanent placement could be achieved only through a grant of permanent custody to CSB.
 {¶ 16} The evidence before the trial court fully supported its finding that permanent custody was in the best interest of A.B. The assignment of error is overruled.
 III. {¶ 17} The assignment of error is overruled and the judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 7 
 SLABY, J., MOORE, J. CONCUR. *Page 1